1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ERNESTO LOPEZ,                              No C 05-4871 VRW (PR)

          Petitioner,

                      ORDER DENYING PETITION FOR A
        v                 WRIT OF HABEAS CORPUS

A P KANE, Warden,

          Respondent.

_____/

      Ernesto Lopez, a state prisoner incarcerated at the

Correctional Training Facility in Soledad, California, seeks a writ

of habeas corpus under 28 USC § 2254 challenging the Board of Prison

Terms' ("BPT" or "board") August 27, 2004 decision to deny him

parole.

      Per order filed on March 24, 2006, the court found that

Lopez's claim that the BPT did not comport with due process in

finding him not suitable for parole appears colorable under § 2254,

when liberally construed, and ordered respondent to show cause why a

writ of habeas corpus should not be granted.  Doc #2.  Respondent

instead filed a motion to dismiss on the ground that Lopez lacked

standing and had insufficiently pled his claim because he failed to

identify which parole consideration hearing he sought to challenge. Doc #3.  Lopez filed an opposition and respondent filed a reply. Docs #4, 5.

Per order filed on December 1, 2006, the court granted respondent's motion to dismiss and gave Lopez leave to cure his petition by amending it to indicate which parole hearing he sought to challenge.  Doc # 6.  Lopez filed an amended petition.  Doc # 7.

Per order filed on March 13, 2007, the court ordered respondent to file an answer to the amended petition.  Doc #8. Respondent has filed an answer and Lopez has filed a traverse.  Docs #9, 11.

I

On December 14, 1988, Lopez was convicted by a Los Angeles County superior court jury of one count of second degree murder and three counts of assault with a deadly weapon.  Judgment at 1 (Resp't Ex 1).  An enhancement for commission of a felony while armed with a firearm was found true, and Lopez was sentenced to an indeterminate term of 16 years to life in state prison.  Id.

On August 27, 2004, Lopez appeared before the BPT for a parole consideration hearing for the fourth time.  The board found him unsuitable for parole and denied him a subsequent hearing for one year.  Hr'g Tr at 40 (Resp't Ex 3).  Lopez challenged the BPT's decision in the state superior, appellate and supreme courts.  After the Supreme Court of California denied his petition for review on June 8, 2005, the instant federal petition for a writ of habeas corpus followed.

2

**United States District Court**

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

II

The Antiterrorism and Effective Death Penalty Act of 1996
("AEDPA"), codified under 28 USC § 2254, provides "the exclusive
vehicle for a habeas petition by a state prisoner in custody
pursuant to a state court judgment, even when the [p]etitioner is
not challenging his underlying state court conviction."  White v
Lambert, 370 F3d 1002, 1009-10 (9th Cir 2004).  Under AEDPA, this
court may entertain a petition for habeas relief on behalf of a
California state inmate "only on the ground that he is in custody in
violation of the Constitution or laws or treaties of the United
States."  28 USC § 2254(a).

The writ may not be granted unless the state court's
adjudication of any claim on the merits: "(1) resulted in a decision
that was contrary to, or involved an unreasonable application of,
clearly established Federal law, as determined by the Supreme Court
of the United States; or (2) resulted in a decision that was based
on an unreasonable determination of the facts in light of the
evidence presented in the State court proceeding."  Id at § 2254(d).
Under this deferential standard, federal habeas relief will not be
granted "simply because [this] court concludes in its independent
judgment that the relevant state-court decision applied clearly
established federal law erroneously or incorrectly.  Rather, that
application must also be unreasonable."  Williams v Taylor, 529 US
362, 411 (2000).

While circuit law may provide persuasive authority in
determining whether the state court made an unreasonable application
of Supreme Court precedent, the only definitive source of clearly

3

established federal law under 28 USC § 2254(d) is in the holdings
(as opposed to the dicta) of the Supreme Court as of the time of the
state court decision.  Id at 412; <u>Clark v Murphy</u>, 331 F3d 1062, 1069
(9th Cir 2003).

**III**

Lopez seeks federal habeas corpus relief from the BPT's
August 27, 2004 decision finding him not suitable for parole and
denying him a subsequent hearing for one year on the ground that the
decision does not comport with due process.  Lopez argues that there
was insufficient evidence to support the BPT's decision to deny
parole in his case, and further argues that he was denied parole
based on an anti-parole or no-parole policy.

California's parole scheme provides that the BPT "shall
set a release date unless it determines that the gravity of the
current convicted offense or offenses, or the timing and gravity of
current or past convicted offense or offenses, is such that
consideration of the public safety requires a more lengthy period of
incarceration for this individual, and that a parole date,
therefore, cannot be fixed at this meeting."  Cal Penal Code §
3041(b).  In making this determination, the BPT must consider "all
relevant, reliable information available to the panel" including
factors like the prisoner's social history, past criminal history,
and base and other commitment offenses, including behavior before,
during and after the crime.  Cal Code Regs tit 15, § 2402(b)-(d).

California's parole scheme "gives rise to a cognizable
liberty interest in release on parole" which cannot be denied

**4**

1 without adequate procedural due process protections.  Sass v

2 California Bd of Prison Terms, 461 F3d 1123, 1128 (9th Cir 2006);

3 McQuillion v Duncan, 306 F3d 895, 902 (9th Cir 2002).  It matters

4 not that, as is the case here, a parole release date has never been

5 set for the inmate because "[t]he liberty interest is created, not

6 upon the grant of a parole date, but upon the incarceration of the

7 inmate."  Biggs v Terhune, 334 F3d 910, 914-15 (9th Cir 2003).

8       A prisoner's due process rights require that "some

9 evidence" support the parole board's decision finding him unsuitable

10 for parole.  Sass, 461 F3d at 1125 (holding that the "some evidence"

11 standard for disciplinary hearings outlined in Superintendent v

12 Hill, 472 US 445, 454-55 (1985), applies to parole decisions in

13 § 2254 habeas petition); Biggs, 334 F3d at 915 (same); McQuillion,

14 306 F2d at 904 (same).  This "some evidence" standard is minimally

15 stringent and ensures that "the record is not so devoid of evidence

16 that the findings of [the BPT] were without support or otherwise

17 arbitrary."  Hill, 472 US at 457.  Determining whether this

18 requirement is satisfied "does not require examination of the entire

19 record, independent assessment of the credibility of witnesses, or

20 weighing of the evidence."  Id at 455-56 (quoted in Sass, 461 F3d at

21 1128).

22       Due process also requires that the evidence underlying the

23 parole board's decision have some indicia of reliability.  Biggs,

24 334 F3d at 915; McQuillion, 306 F3d at 904.  Relevant in this

25 inquiry "is whether the prisoner was afforded an opportunity to

26 appear before, and present evidence to, the board."  Morales v

27 California Dep't of Corrections, 16 F3d 1001, 1005 (9th Cir 1994),

28

United States District Court
For the Northern District of California

**5**

rev'd on other grounds, 514 US 499 (1995).  In sum, if the parole board's determination of parole unsuitability is to satisfy due process there must be some evidence, with some indicia of reliability, to support the decision.  <u>Rosas v Nielsen</u>, 428 F3d 1229, 1232 (9th Cir 2005).

A

Lopez argues that the BPT based its conclusion that he is unsuitable for parole on insufficient evidence.  But the record shows that the BPT found three circumstances tending to show unsuitability for parole on which it based its conclusion that Lopez was "a danger to society or a threat to public safety."  Hr'g Tr at 40; see Cal Code Regs tit 15, § 2402(a) (stating that a prisoner determined to be an unreasonable risk to society shall denied parole).  First, the board pointed to the commitment offense, which it found was "carried out in a manner which demonstrates a callous disregard for human life."  Hr'g Tr at 41.  Second, the board found Lopez's parole plan to be insufficient because he did not have an offer of employment upon release.  Id at 41-42.  And third, the board was not satisfied that Lopez possessed sufficient insight into the nature of the commitment offense.  Id at 41.  The record also shows that the BPT afforded Lopez and his counsel an opportunity to speak and present Lopez's case at the hearing, gave them time to review Lopez's central file, allowed them to present relevant documents and provided them with a reasoned decision in denying parole.  See id at 1-39; see also <u>Morales</u>, 16 F3d at 1005.

/

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

1    The board first found that the facts surrounding the
2 commitment offense indicated that Lopez would pose an unreasonable
3 risk of danger to society if released on parole.  Hr'g Tr at 40-41.
4 On September 26, 1987, Lopez and other members of the Bahalana gang
5 were denied admittance to a party following a confrontation between
6 a companion of Lopez and a member of a rival gang, the Satanas.
7 Probation Rep at 12 (Resp't Ex 2).  Lopez and his companions left
8 the party after the confrontation, but returned to the residence
9 where the party was being held later that night.  See Hr'g Tr at 8-
10 10.  As the group drove by the residence, Arnel Sola leaned out of
11 the front passenger window of the car and fired three shots at the
12 residence, killing fifteen-year-old Tina Kang.  See id.  A witness
13 heard someone yell "Fuck STS" immediately before the shots were
14 fired.  Probation Rep at 3.  Lopez was in the back seat of the car
15 during the shooting.  Id at 12; Hr'g Tr at 8-10.  The board
16 concluded that the offense demonstrated "a callous disregard for
17 human life" and weighed against a finding of suitability for parole.
18 Hr'g Tr at 41; see Cal Code Regs tit 15, § 2402(c)(1)(D) (listing
19 factors tending to show unsuitability for parole, including that
20 "[t]he offense was carried out in a manner which demonstrates an
21 exceptionally callous disregard for human suffering").

22    The BPT also found that Lopez lacked an adequate parole
23 plan.  Hr'g Tr at 41-42.  The board noted that Lopez was subject to
24 an INS hold, id at 23, and expressed concern that Lopez did not have
25 any offers of post-release employment in either the United States or
26 in the Philippines if paroled.  Id at 41-42.  "Understanding and
27 Plans for Future" is listed as a circumstance tending to show

28    **7**

suitability for release in the regulations applicable to parole board hearings.  Cal Code Regs tit 15, § 2402(c) ("The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.").  The board properly exercised its discretion in weighing Lopez's failure to find post-release employment as a circumstance tending to show unsuitability for parole.  See id ("These circumstances are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgement of the panel."); see also In re Honesto, 130 Cal App 4th 81, 97 (Cal Ct App 2005) (lack of adequate parole plan indicated prisoner was not yet suitable for parole).

Finally, the board found that Lopez did not demonstrate sufficient insight into the commitment offense.  Hr'g Tr at 41-43.  "Signs of Remorse" is listed in the regulations as a circumstance tending to show suitability for parole.  Cal Code Regs tit 15, § 2402(d)(3) ("The prisoner performed acts which tend to indicate the presence of remorse, such as * * * indicating that he understands the nature and magnitude of the offense.").  Lopez's most recent psychological evaluation noted that he "demonstrated some insight into the commitment offense" and recognized that "the death of the victim to her family must have been * * * more devastating than his own incarceration has been to his family." Hr'g Tr at 2.  But despite this, Lopez maintained at the hearing that he did not know that the shooting was going to take place because he was not present when it was planned.  Id at 10.  He also claimed that at the time of the shooting he believed that the shots were fired above the heads

United States District Court

For the Northern District of California

1    of the people standing outside the party.  Id.  During the hearing,

2    Lopez was reluctant to admit that he was a member of the Bahalana

3    gang as such; he insisted that he believed it was a "social club"

4    when he joined, despite having been "jumped" into the gang and

5    acquiring Bahalana tattoos on his knees while in county jail.  Id at

6    11-12, 16-19. The board properly exercised its discretion in

7    weighing Lopez's lack of insight into the commitment offense as a

8    circumstance tending to show unsuitability for parole.  See Cal Code

9    Regs tit 15, § 2402(c), (d) ("the importance attached to any

10   circumstance or combination of circumstances in a particular case is

11   left to the judgment of the panel").

12          The board also considered circumstances that tended to

13   demonstrate Lopez's suitability for parole.  The board recognized

14   that Lopez did not have a criminal record prior to his conviction

15   for second degree murder, Hr'g Tr at 10, and commended Lopez for his

16   clean disciplinary record while in prison as well as enrollment in

17   drug and alcohol abuse treatment programs, id at 42.  The board

18   recognized that Lopez was "doing the best [he] can" and was "on the

19   right track."  Id at 43.  But, it concluded that "these positive

20   aspects of his behavior do not outweigh the factors of

21   unsuitability."  Id at 42.  At the conclusion of the parole hearing,

22   the BPT denied parole for one year and requested a new psychological

23   examination to evaluate Lopez's insight into the commitment offense

24   and to determine whether he would be able to maintain the gains made

25   in prison if released on parole.  Id at 41.

26          Lopez argues that the BPT relied on the unchanging facts

27   of his commitment offense to determine that he is not suitable for

28                                    **9**

1   parole.  The Ninth Circuit has cautioned that denying parole

2   strictly because of the nature of the commitment offense and prior

3   conduct "would raise serious questions involving [the prisoner's]

4   liberty interest in parole * * * and could result in a due process

5   violation."  <u>Biggs</u>, 334 F3d at 916-17.  But because the BPT did not

6   base its decision to deny parole solely on the nature of Lopez's

7   commitment offense, the rationale of <u>Biggs</u> is not implicated here.

8   See, e g, <u>Rosas</u>, 428 F3d at 1232-33 (upholding denial of parole

9   based on gravity of offense and psychiatric reports).  The BPT also

10  found that Lopez's parole plans were inadequate and that he failed

11  to demonstrate sufficient insight into the nature of his commitment

12  offense.  These findings alone constitute some evidence under <u>Hill</u>.

13  See <u>Hill</u>, 474 US at 455-56 (inquiry is simply "whether there is any

14  evidence in the record that could support the conclusion reached by

15  the [BPT]").  And in combination with each other also support the

16  board's determination that Lopez posed an unreasonable risk of

17  danger to society if released from prison. Cf <u>Hayward v Marshall</u>,

18  512 F3d 536, 543 (9th Cir 2008) (test is not whether some evidence

19  supports the reasons cited for denying parole, but whether some

20  evidence indicates a prisoner's release unreasonably endangers

21  public safety).

22          The California superior court rejected Lopez's <u>Biggs</u> claim

23  on state habeas review.  <u>In re Lopez</u>, No. HC 04953, slip op at 5

24  (Cal Super Ct Feb 10, 2005) (Resp't Ex 10).  The court stated that

25  the "pivotal issue" was whether the BPT could deny parole based on

26  Lopez's commitment offense alone, but concluded that Lopez had

27  failed to make out a cognizable <u>Biggs</u> claim because "Petitioner does

28                                          10

United States District Court
For the Northern District of California

1   not allege that he has previously been denied parole based <u>solely</u> on

2   the nature of his offense." Id at 5-6 (emphasis in original). The

3   superior court did not consider the BPT's expressed concern that

4   Lopez lacked insight into the commitment offense and noted that the

5   fact that Lopez did not have a confirmed job offer upon release was

6   not a valid factor supporting unsuitability because it is not

7   specifically enumerated in the regulations. See id at 4-5. The

8   court nonetheless affirmed the decision of the BPT based on its

9   determination that Lopez did not make out a valid <u>Biggs</u> claim. See

10  id at 5-6. The state appellate and supreme courts affirmed without

11  comment.

12       Under 28 USC § 2254(d), what matters is whether the

13  operative state court's decision, as opposed to its reasoning, was

14  contrary to, or involved an unreasonable application of, clearly

15  established federal law. See <u>Hernandez v Small</u>, 282 F3d 1132, 1140

16  (9th Cir 2002) ("[T]he intricacies of the state court's analysis

17  need not concern us; what matters is whether the decision the court

18  reached was contrary to controlling federal law."). For the reasons

19  set forth above, this court is satisfied that the superior court's

20  decision rejecting Lopez's "some evidence" claim was not contrary

21  to, or involved an unreasonable application of, clearly established

22  federal law. It matters not that the superior court did not

23  consider the BPT's expressed concern with Lopez's lack of insight

24  into the commitment offense, or that it found that his not having a

25  confirmed job offer upon release was not a valid factor supporting

26  unsuitability. After all, the pertinent regulations make clear that

27  the board "shall" consider all relevant, reliable information

28                                      11

1  available when making the suitability determination.  See Cal Code

2  Reg tit 15 § 2404(b); see also <u>In re Honesto</u>, 130 Cal App 4th at 97

3  (noting that lack of adequate parole plan indicated prisoner was not

4  yet suitable for parole).

5          In sum, some evidence supports the board's decision to

6  deny Lopez parole and that evidence bears some indicia of

7  reliability.  See, eg, <u>Rosas</u>, 428 F3d at 1232-33 (upholding denial

8  of parole based on gravity of offense and psychiatric reports);

9  <u>Biggs</u>, 334 F3d at 916 (upholding denial of parole based solely on

10  gravity of offense and conduct prior to imprisonment); <u>Morales</u>, 16

11  F3d at 1005 (upholding denial of parole based on criminal history,

12  cruel nature of offense, and need for further psychiatric

13  treatment).  The panel's legitimate concern with Lopez's failure to

14  generate an adequate parole plan, his lack of insight into the

15  commitment offense and the seriousness of the commitment offense

16  constitute some evidence under <u>Hill</u>.  See <u>Hill</u>, 474 US at 455-56

17  (inquiry is simply whether there is any evidence in the record that

18  could support the conclusion reached by the BPH); see also Cal Code

19  Regs tit 15, § 2402(c), (d) (describing the circumstances tending to

20  show unsuitability and suitability for release).

21          The state court decision denying Lopez's "some evidence"

22  claim was not contrary to, or involved an unreasonable application

23  of, clearly established federal law as determined by the Supreme

24  Court.  28 USC § 2254(d).  Lopez is not entitled to federal habeas

25  relief on his due process claim that the decision to deny him parole

26  was based on insufficient evidence.

27  /

28

United States District Court
For the Northern District of California

**B**

Lopez also argues that the denial of parole in his case was based on an anti-parole or no-parole policy.  In support of this claim Lopez asserts that the BHP has granted "only an approximate 232 parole dates out of 11,000 Board hearings" and concludes that the "approximate 98.5% denial rate [] supports the premise that such a policy exists."  Doc #1 at 5b.  Lopez does not provide a source for this data.

Promulgation of an anti-parole or no-parole policy is violative of an inmate's due process rights.  See In re Rosenkrantz, 29 Cal 4th 616, 683 (2002) ("It is well established that a policy of rejecting parole solely on the basis of the type of offense, without individualized treatment and due consideration, deprives an inmate of due process of law.").  In Rozencrantz, the California Supreme Court upheld the governor's reversal of a parole board's finding of suitability for parole, despite the trial court's determination that the reversal was based on a policy of automatic parole denial.  Id at 686.  The court reasoned that:

> [p]etitioner has not presented any evidence establishing that the Governor's actual decisions reversing grants of parole by the Board failed to engage in an individualized consideration of the factors concerning parole suitability, or that the decisions themselves reflected or relied upon any blanket policy of denying parole to all murderers.  The circumstance that the Governor has reversed most of the Board's decisions granting parole does not establish that he follows a blanket policy of denying parole or that his decision in the present case was based upon such a policy, rather than upon a consideration of the factors and evidence discussed in the Governor's lengthy written decision denying petitioner parole.

13

United States District Court
For the Northern District of California

1   Id at 685-86.

2       Lopez has not met his burden of demonstrating that an
3   anti-parole or no-parole policy exists and that such policy was
4   applied in his individual parole denial.  See <u>James v Borg</u>, 24 F3d
5   20, 26 (9th Cir 1994) ("Conclusory allegations which are not
6   supported by a statement of specific facts do not warrant habeas
7   relief"); <u>Jones v Gomez</u>, 66 F3d 199, 204-05 (9th Cir 1995) (denying
8   petitioner's <u>Brady</u> claim argued in a single page without reference
9   to the record or any document).  Even accepting as true Lopez's
10  assertion that less than 2% of inmates are granted parole, this fact
11  alone does not lead inexorably to the conclusion that the board
12  failed to base each individual denial on some evidence.  Further,
13  even if Lopez were to provide evidence sufficient to prove an anti-
14  parole or no parole policy, he would not be eligible for habeas
15  relief because he was not subject to such a policy here.  The
16  individualized decision to deny Lopez parole was based on some
17  evidence.

18      The state court decision rejecting Lopez's anti-parole or
19  no-parole policy claim was not contrary to, or involved an
20  unreasonable application of, clearly established federal law as
21  determined by the Supreme Court.  28 USC § 2254(d).  Lopez is not
22  entitled to federal habeas relief on his due process claim that he
23  was denied parole as part of an anti-parole or no-parole policy.

24  /

25  /

26  /

27  /

28                                  **14**

IV

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

The clerk shall enter judgment in favor of respondent and close the file.

IT IS SO ORDERED.

_____

**VAUGHN R WALKER**
**United States District Chief Judge**

G:\PRO-SE\VRW\HC.05\Lopez1.denial.wpd

15

**United States District Court**
For the Northern District of California